# MISSOURI PACIFIC RAILWAY COMPANY *v.* TUCKER.

## ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 52. Submitted November 14, 1912.—Decided June 16, 1913.

To require a railroad company to charge such rates for transportation as prevent it from obtaining a reasonable return for the service rendered amounts to deprivation of property without due process of law in violation of the Fourteenth Amendment and is beyond the power of the State. *Atlantic Coast Line* v. *North Carolina Commission,* 206 U. S. 1.

Rates that a railroad company may charge for transportation as fixed by the legislation of a State are presumptively valid, but not conclusively so; and the company is entitled to have the question of whether the prescribed rates are confiscatory and therefore deprive it of its property without due process of law determined in appropriate judicial proceedings.

A common carrier is not at liberty to accept or decline shipments of lawful merchandise but must accept them and name to the shipper the rate of transportation.

While it may be within the power of the State to impose double or treble damages on a carrier for overcharging transportation rates, it is beyond its power to impose a fixed amount as liquidated damages in every case regardless of, and as a general rule many times in excess of, the actual damages. To do so would deprive the carrier of its property without due process of law in violation of the Fourteenth Amendment.

A state statute which does not permit a carrier to have the question of sufficiency of rates determined by a court of competent jurisdiction, and which imposes such conditions upon the appeal for judicial relief as works an abandonment of the right rather than face those conditions, is unconstitutional as depriving the carrier of its property without due process of law. *Ex parte Young,* 209 U. S. 123, 147.

That part of the statute of Kansas of 1905 establishing maximum rates for transportation of oil, gasoline, etc., which fixes $500 as liquidated damages in favor of the shipper for any excess charge regardless of the amount thereof, is so arbitrary and oppressive as to render it

unconstitutional under the Fourteenth Amendment as taking the property of the carriers without due process of law.
82 Kansas, 222, reversed.

THE facts, which involve the constitutionality under the Fourteenth Amendment of the statute of 1905 of the State of Kansas establishing maximum rates for transportation of oil, gasoline, etc., which fixes five hundred dollars as liquidated damages for violations of the act, are stated in the opinion.

*Mr. Bailie P. Waggener* for plaintiff in error:

The act is, on its face, in conflict with the Constitution of the United States, and denies the railway companies the equal protection of the law.

When the railroad company is called to account for a violation of the law, it may then, and not until then, question the rates. The Supreme Court of Kansas has so construed the statute. *C., M. & St. P. R. R. Co.* v. *Minnesota,* 134 U. S. 418, 458.

Violation of this section of the act is not made a misdemeanor, and no public officer is charged with its enforcement. The unreasonableness of the rates, therefore, cannot be tested or questioned in a comprehensive bill in equity. The company can initiate no affirmative action.

The judgment in one case would not be *res judicata* as against any other shipper seeking to collect the penalty. The statute is void on its face under *Ex parte Young,* 209 U. S. 123, 146.

The statute of Kansas involved in this case is far more drastic, arbitrary and unreasonable than the statute of Nebraska, declared unconstitutional in *Mo. Pac. Ry.* v. *Nebraska,* 217 U. S. 207, and see also *C., M. & St. P. Ry. Co.* v. *Minnesota,* 134 U. S. 460.

While the railway company is testing the validity of the law as to one shipment, either the confiscatory rates are in force or enormous penalties are accruing against

the carrier for non-observance of the statutory schedules. The remedy afforded must be adequate, or it is not due process of law. *Smyth* v. *Ames*, 169 U. S. 466, and see also *Davidson* v. *New Orleans*, 96 U. S. 102.

The construction placed upon the act by the Supreme Court of Kansas in effect closes all approach to the courts by the carrier for relief from unreasonable and confiscatory legislative rates. To provide a remedy which is unreasonable, and which is so onerous and impracticable as to substantially give none at all, renders the law invalid, although what is termed a remedy is in fact given. *Mc-Gahey* v. *Virginia*, 135 U. S. 662, 694; *Ex parte Young,* *supra*.

The act is class legislation of the rankest character, arbitrary and unreasonable, and denies to railroad companies the equal protection of the law.

The rates prescribed by the schedule in the act are unreasonable and confiscatory, and deprive the railroad company of its property without compensation, and without due process of law, and deny to it the equal protection of the law.

*Mr. John S. Dawson*, Attorney General of Kansas, *Mr. S. N. Hawkes, Mr. Richard Henry Towne* and *Mr. John W. Tucker, pro se*, for defendant in error:

No violation of the due process clause of the Fourteenth Amendment is shown in the statute involved in this case.

There being no showing of any reduction in rates of oil transported, there can be no violation by the legislation of the due process clause of the Fourteenth Amendment. Because an article may be carried at a loss the rate is not necessarily unreasonable.

Under the rule of commercial necessity, certain commodities are at times transported at a figure below the average of tariffs, sometimes at an actual habitual loss. The fact that such rate may be prescribed as to a particu-

lar commodity will not from that fact alone lay the prescription open to the imputation of unreasonableness. *State* v. *Minn. & St. L. R. Co.*, 80 Minnesota, 191; *S. C.*, aff'd 186 U. S. 257; *State* v. *Railroad Co.*, 57 So. Rep. 673; *Reagan* v. *Farmers' L. & Tr. Co.*, 154 U. S. 362, 412.

In so flagrant a case of discrimination as here shown, public interest, public policy, and public welfare demand adequate means for fixing rates at least as low as those habitually given the most favored shipper, and especially is this applicable to an integral product, the theme of such notorious comment and animadversion as the oil traffic. *Ala. & V. R. Co.* v. *Mississippi R. R. Com.*, 203 U. S. 496; *Seaboard Air Line Co.* v. *Florida*, 203 U. S. 261.

Public interest and even custom, under the guise of "commercial necessity," may outweigh the usual considerations entering into the fixing of a rate. Carriage at habitual loss is of so common occurrence that the courts take judicial notice of the usual course of business in that regard, and will refuse to condemn as unreasonable a prescription of that nature, when falling within the rule of necessity or demanded by public interest. *McCue* v. *Nor. Pac. R. Co.*, 25 L. R. A. (N. S.) 1001; *S. C.*, aff'd, 216 U. S. 579; see also cases compelling a road to put on additional trains at a positive loss, whether it be for public safety, or mere personal convenience. *Atlantic Coast Line* v. *North Car. Com.*, 206 U. S. 1; *Mo. Pac. Ry. Co.* v. *Kansas*, 216 U. S. 262. And as to other requirements, *Consumers' Co.* v. *Hatch*, 224 U. S. 148; *Memphis* v. *Postal Tel Co.*, 164 Fed. Rep. 342.

Legislation fixing rates of transportation is presumptively reasonable, and the burden is on plaintiff in error to show that the rate is unreasonable from every angle. *Texas & P. R. Co.* v. *R. R. Com.*, 192 Fed. Rep. 280; *Railroad Commission* v. *Cumberland Tel. Co.*, 212 U. S. 414, see, also, *So. Pac. Cov. R. R. Com.*, 193 Fed. Rep. 699.

If the statute be doubtful, the court will presume that

the legislature intended the enactment of a valid, sensible
and just law, Black on Interpretation, 87, and that the
legislature did not attempt to transcend the rightful
limits of its authority. *Id.* 89. Every act is presumed to
be valid and constitutional until the contrary is shown.
*Id.* 93, and cases there cited; see also *Sinking Fund Cases*,
99 U. S. 700; 1 Willoughby on Constitutional Law, 20,
23.

Charges must be reasonable, is the requirement of the
law, as expressed by the cases. As to the question of
reasonableness, the test is not alone if it be compensatory
to this or that particular individual. *Reagan* v. *Farmers'
Co.*, 154 U. S. 362, 412.

Reasonableness should be determined from average
normal conditions. *C. & G. T. R. Co.* v. *Wellman*, 143
U. S. 680; *Covington & L. T. Co.* v. *Sandford*, 164 U. S. 578;
*Dow* v. *Biedleman* (Ark.), 5 S. W. Rep. 297; *S. C.*, aff'd,
125 U. S. 680; *St. L. & S. F. R. Co.* v. *Gill*, 54 Arkansas,
101; *S. C.*, aff'd, 154 U. S. 649; *Purdy* v. *Erie R. Co.* (N.
Y.), 48 L. R. A. 669.

The legislature is given, under the police power, not
only the clear right to fix rates, in which it necessarily is
given wide discretion, but when the legislature shall
directly fix the rate, the rule that the question of reason-
ableness is a judicial one does not apply, but the rate fixed
must be reasonable. Judicial determination does not
precede the execution of the law, but on attempted en-
forcement it may be invoked in a proper case. *Budd* v.
*New York*, 143 U. S. 517, and note 5 L. R. A. 559; *Munn*
v. *Illinois*, 94 U. S. 113.

The State is simply farming out the operation of public
utilities. See *Smyth* v. *Ames*, 169 U. S. 466, 544, holding
that a railroad corporation maintaining a highway under
the authority of the State may not fix its rates with a view
solely to its own interests, and ignore the rights of the
public.

This exercise of legislative discretion is subject to judicial supervision to no greater extent than is like exercise in any applications of the police power; the occasion for judicial determination does not arise until the law is applied as effectual.

This is an action for damages expressly given by the statute, not a penalty. If it were for a penalty, the only remedy therefor at common law would be an action in debt on the statute. This action would be trespass on the case at common law. This action sounds in tort. *Smith* v. *Chicago & N. W. Ry. Co.,* 49 Wisconsin, 443; *Heiserman* v. *Burlington Ry. Co.,* 63 Iowa, 736; *Graham* v. *Railway Co.,* 53 Wisconsin, 473.

It is not necessary that the statute to be constitutional must be weighted with a clog to its enforcement so as to give to the party affected an opportunity to obtain a judicial annulment of the legislation, not only as to himself, but as to every other person similarly affected.

That would mean that every penalty imposed, whether corporal or pecuniary, on behalf of the public, and as well every remedy given private parties damaged through infractions of the law, must be subject to some means of judicial investigation of the reasonableness of the requirement, in depriving the malefactor of property, or the tortfeasor in private injuries, if the one or the other shall be conducting business charged with public use or interest.

If that be the law, there is no legislative discretion in the case of business charged with public use and interest.

It is the province of the legislature to provide what the law shall be, and the duty of the court to determine and declare what the law is with reference to a given state of facts. McGehee on Due Process of Law, 77; *Roller* v. *Holly,* 176 U. S. 398; *Ex parte Young,* can be clearly distinguished from this case.

The act is not class legislation.

MR. JUSTICE VAN DEVANTER delivered the opinion of
the court.

By an act of February 17, 1905, the legislature of the
State of Kansas prescribed a schedule of maximum rates
to be charged by common carriers for the transportation,
between points in that State, of "illuminating oil, gasoline,
fuel oil, or crude petroleum, in cans, barrels, tanks or tank
cars," and provided that every such carrier "which shall
demand, exact or receive for such transportation or de-
livery any sum in excess of the rates hereby made lawful,
shall be liable to any person injured thereby in the sum of
five hundred dollars as liquidated damages, to be recov-
ered by action in any court of competent jurisdiction, to-
gether with a reasonable attorney's fee, to be fixed by the
court." Laws, 1905, c. 353, p. 589.

In December, 1906, there were shipped from Humboldt,
Kansas, to Cawker City, in that State, 25 barrels of fuel
oil, of which J. W. Tucker was the consignee. The ship-
ment was carried from the point of origin about 253 miles
over the railroad of the Santa Fe Company to Concordia,
and thence to the point of destination, about 47 miles,
over the line of the Missouri Pacific Railway Company.
According to the statute the charge for the entire trans-
portation should have been $12.00, but the Missouri
Pacific Company demanded and collected therefor from
Tucker, the consignee, $3.02 in excess of that sum. He
thereupon brought an action in one of the courts of the
State, under the act before named, to recover from that
company $500 as liquidated damages and a reasonable
attorney's fee, to be fixed by the court. The company
defended upon the grounds that the statutory rates were
confiscatory and void, and that the statute, and particu-
larly the provision for the recovery of $500 as liquidated
damages, was so arbitrary and unreasonable as to be re-
pugnant to the due process of law and equal protection

clauses of the Fourteenth Amendment to the Constitution of the United States. Other defenses, based on the state constitution, were interposed, but we need not notice them. The plaintiff recovered a judgment for the $500, which was affirmed by the Supreme Court of the State, the Federal questions being decided adversely to the company, 82 Kansas, 222, and the latter prosecutes this writ of error.

As the right of recovery and the judgment sustaining it were rested upon the provision imposing a liability for liquidated damages in the sum of $500, we come at once to the question of the validity of that provision under the Fourteenth Amendment.

Primarily it is to be observed that the rates prescribed by the legislature, while presumptively valid, are not conclusively so; that to require the company, in the operation of its road, to give effect to rates which prevent it from obtaining a reasonable return for the service rendered to the public is to deprive it of its property without due process of law; and that whether the prescribed rates are thus in excess of the State's power (see *Atlantic Coast Line R. R. Co.* v. *North Carolina Corporation Commission,* 206 U. S. 1, 24–26, and cases cited) is a question which the company is entitled to have determined in appropriate judicial proceedings. And it also is to be observed that the act of 1905 and other laws of the State, as construed by the state court, afford the company no opportunity for securing a judicial determination of the validity of these rates otherwise than as it may do so in a defensive way when charged, in a case like this or in some criminal prosecution, with failing to give effect to them.

Being a common carrier, the company is not at liberty to accept or decline shipments of oil. It must receive and carry them when offered and must be ready to name to shippers the rates at which that service will be rendered. If the statutory rates permit a reasonable return they are

controlling; if they prevent it they are invalid. But of their obligatory character the company is not the judge. And yet it must choose whether it will give effect to them or no, and then must abide the result of its action. If they be so unreasonably low as to be invalid it cannot give effect to them without sustaining a serious and irreparable loss; and if effect be not given to them and they be subsequently adjudged lawful, the enforcement of the prescribed liabilities and penalties will likewise entail a most serious loss, for the transactions involved must necessarily be numerous. In one of the briefs it is said that the intrastate oil shipments on the company's lines in Kansas in a single year are as many as 10,000. Thus it will be perceived that the position of the company, with no right itself to institute a proceeding to determine for itself and all shippers the validity of the legislative rates, is one of exceeding perplexity.

On the other hand, the interests of shippers and consumers of oil must be considered no less than those of the carrier. Experience teaches that to secure adherence to rates, even when lawfully prescribed, it is essential that deviations from them be discouraged by adequate liabilities and penalties.

It is in the light of these considerations that the validity of the provision imposing a liability for liquidated damages in the sum of $500 for every charge in excess of the legislative rates must be tested.

It will be perceived that this liability is not proportioned to the actual damages. It is not as if double or treble damages were allowed, as often is done, and as we think properly could have been done here. Nor is it as if there would be difficulty in proving or ascertaining the actual damages, thereby furnishing a reason for prescribing a liquidated amount reasonably approximating the probable damages, taking one case with another. *Chicago, Burlington & Quincy Railroad Co.* v. *Cram*, 228 U. S. 70. What the

statute does is to authorize a recovery of $500 in every case, whether the shipment be of one barrel, or of ten or twenty-five barrels, or of a tank car, and this although it is of common knowledge that the possible damages in respect of the charge for carrying any of these from one point in the State to another could never be more than a small fraction of that sum. In the present case the shipment was of 25 barrels for a distance of 300 miles, and the excess over the legislative rate, $3.02, was less than 1–150 of the authorized recovery.

The state court, although recognizing that the solution of the problem is not free from difficulty, reached the conclusion that "so long as the defendant [the carrier] cannot be made to suffer until a competent court has passed upon the justice of the legislative rates, the guarantees of the Federal Constitution are not infringed." But that this view fails to recognize the real plight of the carrier is made plain by the following extract from the opinion in *Ex parte Young,* 209 U. S. 123, 147:

"If the law be such as to make the decision of the legislature or of a commission conclusive as to the sufficiency of the rates, this court has held such a law to be unconstitutional. *Chicago &c. Railway Co.* v. *Minnesota,* 134 U. S. 418. A law which indirectly accomplishes a like result by imposing such conditions upon the right to appeal for judicial relief as works an abandonment of the right rather than face the conditions upon which it is offered or may be obtained, is also unconstitutional. It may therefore be said that when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial construction of laws which deeply affect its rights.

"It is urged that there is no principle upon which to

base the claim that a person is entitled to disobey a statute at least once, for the purpose of testing its validity without subjecting himself to the penalties for disobedience provided by the statute in case it is valid. This is not an accurate statement of the case. Ordinarily a law creating offenses in the nature of misdemeanors or felonies relates to a subject over which the jurisdiction of the legislature is complete in any event. In the case, however, of the establishment of certain rates without any hearing, the validity of such rates necessarily depends upon whether they are high enough to permit at least some return upon the investment (how much it is not now necessary to state), and an inquiry as to that fact is a proper subject of judicial investigation. If it turns out that the rates are too low for that purpose, then they are illegal. Now, to impose upon a party interested, the burden of obtaining a judicial decision of such a question (no prior hearing having ever been given) only upon the condition that if unsuccessful he must suffer imprisonment and pay fines as provided in these acts, is, in effect, to close up all approaches to the courts, and thus prevent any hearing upon the question whether the rates as provided by the acts are not too low, and therefore invalid. The distinction is obvious between a case where the validity of the act depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character, and the ordinary case of a statute upon a subject requiring no such investigation and over which the jurisdiction of the legislature is complete in any event."

What was said in that case is conclusive of the question here. True, the act then under consideration subjected the officers and agents of the carrier to penalties not found in the act now before us, but, notwithstanding this, we think the liabilities and penalties imposed by the Kansas statute bring it within the controlling principle of that

decision. As applied to cases like the present the imposition of $500 as liquidated damages is not only grossly out of proportion to the possible actual damages but is so arbitrary and oppressive that its enforcement would be nothing short of the taking of property without due process of law and therefore in contravention of the Fourteenth Amendment. See *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, 111; *Standard Oil Co.* v. *Missouri,* 224 U. S. 270, 286.

Upon this ground the judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*