Johnson, J.
It is familiar law, not questioned, that when a municipal corporation by ordinance gives its consent that a natural gas company may enter the municipality, lay down its pipes therein and furnish gas to consumers upon terms and conditions imposed by the. ordinance, which are accepted in writing by the company, such action by both parties constitutes a contract and the rights of the parties thereunder are to be determined by the contract itself. East Ohio Gas Co. v. City of Akron, 81 Ohio St., 33; State, ex rel., v. Cincinnati *325 Gas Light & Coke Co., 18 Ohio St., 263, 7th Syl.; Circleville Light & Power Co. v. Buckeye Gas Co., 69 Ohio St., 259; City of Columbus v. Columbus Gas Co., 76 Ohio St., 309; Interurban Ry. & Term. Co. v. City of Cincinnati, 93 Ohio St., 108, and City of Cleveland v. Cleveland City Ry. Co., 194 U. S., 517.
The passage of the ordinance in December, 1905, granting the right, for the term of twenty-five years, to the company to furnish gas for heating, lighting and power purposes to public and private consumers, through its mains and appliances in the streets, with the right to occupy the streets and public places with such appliances, and the acceptance of that ordinance by the company, constituted a valid and binding contract between the parties. The power of the city to make the grant, and its validity, are amply shown by the above cited authorities. That contract will, by its terms, expire in 1930.
The rights of the parties “are to be determined by the contract itself.” As shown in the foregoing statement, Section 6 of the contract provides that “the grant herein made shall continue for twenty-five (25) years from and after the passage and acceptance of this ordinance, subject, however, to the right of the city to regulate the price of natural gas from time to time, as provided by law.” The parties themselves stipulated that the grant to the company was dependent on and subject to that right of the city. The law then in force provided that the city might regulate the price of gas from time to time. At the time of the making of the con *326 tract in 1905, Sections 2478 and 2479, Revised Statutes, which are now Sections 3982 and 3983, General Code, were in effect. The pertinent por-' tions of those sections are as follows:
Section 3982: “The council of a municipality in which * * * natural or artifical gas companies * * * are established * * * may regulate from time to time the price which such companies may charge for * * * gas for lighting or fuel purposes, * * * for public or private consumption, furnished by such companies * * *. Such cornpanies shall in no event charge more for * * * natural or artificial gas * * * than the price specified by ordinance of council.”
Section 3983: “If council fixes the price at which it shall require a company to furnish * * * either natural or artificial gas to the citizens, or public buildings, or for the purpose of lighting the streets, * * * or for other purposes, for a period not exceeding ten years, and the company or person so to furnish such * * * gas assents thereto, by written acceptance, * * * the council shall not require such company to furnish * * * gas * * * at a less price during the period of time agreed on, not exceeding such ten years.”
These statutory provisions by operation of law entered into and became part of the contract. (Insurance Co. v. Leslie, 47 Ohio St., 409; Milwaukee Mechanics’ Insurance Co. v. Russell, 65 Ohio St., 230, 255, and 19 Cyc., 659.) The obligation of a contract is measured by the standard of the laws in force at the time it was entered into, and its performance is to be regulated by the terms and *327 rules which they prescribe. 6 Ruling Case Law, 325.
It will be observed that by the sections quoted, two entirely different situations are contemplated and provided for, viz.:
First: By Section 3982 the city is given power to regulate the price of gas from time to time.
Second: By Section 3983 it is provided that if the city fixes the price of gas for a period of ten years, and the company assents thereto, the city shall not require it to furnish gas at a less price during the period agreed on, not exceeding such ten years.
In this case the parties themselves provided that the grant of the franchises and privileges to the gas company was dependent on the right of the city to regulate the price of gas from time to time, as provided by law. That is, the city could, under Section 3982, at any time during the twenty-five years, the life of the franchise, fix the price generally without fixing any definite period for which the rate should be in force; or it could, under Section 3983, at any time during the twenty-five years, fix a rate for a definite period not exceeding ten years, and, if the company assented thereto, the city could not reduce the price during that ten-year period. That procedure was followed in the.present case. After the contract was made in 1905, the city fixed a rate for a ten-year' period. This was assented to by the company, and after the expiration of that period, the city, pursuant to the terms of the franchise contract, fixed a price for another ten-year period. Thereupon the gas company filed *328 its complaint with the public utilities commission. The fixing of the first ten-year rate, and its acceptance by the company, did not annul or change the franchise contract by which the grant of privileges was made to the company, nor did it exhaust the power reserved to the city to fix rates. Such action was in conformity to that contract and carried out its express terms. To give exclusive attention to the action of the parties in fixing the rate for the first ten years of the franchise period of twenty-five years is to disregard the provisions of the agreement upon which the grant of privileges to the company is made to depend.
Section 3982, General Code, is the section which confers the regulatory powers on the city. The only place in the statute in which the words “regulate from time to time” are found is in Section 3982, General Code (2478 Revised Statutes). Section 3983, General' Code (2479 Revised Statutes), is not a regulatory statute. It simply limits the term for which the city can fix the rate with the assent of the company. As above shown, both sections entered into and became part of the franchise contract itself. And Sections 3982 and 3983 are entirely consistent with each other.
In State, ex rel., v. Ironton Gas Co., 37 Ohio St., 45, it was decided that a provision in an ordinance fixing the price of gas for a certain period, if accepted by the gas company, precludes the city from lowering the price for the period named, but “If not thus accepted, the power of the council to regulate the price is as ample as if the ordinance contained no such provision.”
*329 Notwithstanding this, if the city at any time should fix a rate which is so unjust or unreasonable and beneath a proper compensatory return as to amount to a taking of the property of the company without just compensation, it would have recourse to the courts for the protection of its rights and property. Mo. Pac. Ry. Co. v. Tucker, 230 U. S., 340, 347; Newark Nat. Gas & Fuel Co. v. City of Newark, 92 Ohio St., 393, and Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa, 234.
Suppose the company had not assented to the rate fixed by the city for the first ten-year period, in that event the power of the city would have been as ample as if no period had been fixed; and when the company did not assent to the rate fixed by the city for the second ten-year period, the power is equally ample. State v. Ironton Gas Co., supra.
In Freeport Water Co. v. Freeport City, 180 U. S., 587, the water company was given the exclusive right to supply the city with water for thirty years, subject to certain terms and conditions named in the ordinance, which also contained provisions for the payment of water rates by consumers. In discussing the power of the municipality to make regulations the court say at page 599:
“An example is afforded by the act of June 6, 1891. By that act the corporate authorities of any city which have authorized or shall authorize any individual, company or corporation to supply water, ‘be and are hereby empowered to prescribe'by ordinance maximum rates and charges for the supply of water furnished by such individual, company or *330 ' corporation. . . . ’ There is no explicit provision for repetitions of the power — none declaring the power conferred a continuing one. Who now doubts that it is ? If rights were claimed and were pleading for a different interpretation we might have to listen to them, but now undisturbed by them we yield without resistance to-that meaning which the subject-matter demands in the absence of negativing words.
“Our conclusion is that the powers conferred by the statutes of 1872 can, without straining, be construed as distributive. The city council was authorized to contract with any person or corporation to construct and maintain waterworks ‘at such rates as may be fixed by ordinance, and for a period not exceeding thirty years.’ The words ‘fixed by ordinance,’ may be construed to mean by ordinance once for all to endure during the whole period of thirty years; or by ordinance from time to time as . might be deemed necessary. Of the two constructions that must be adopted, which is most favorable to the public, not that one which would so tie the hands of the council that the rates could not be adjusted as justice to both parties might require at a particular time.”
Some years after the making of the contract, to-wit, in May, 1911, Sections 614-44 to and including 614-47, General Code, were enacted. These sections permit an appeal to the public utilities commission from ordinances of municipalities fixing rates for any commodity, utility or service.
It is contended that as this law was in effect in August, 1917, when the council passed the ordi *331 nance fixing the thirty-cent rate, the commission was authorized to entertain the complaint filed by the companies. The pertinent part of Section 614-44, General Code, is as follows: “Any municipal corporation in which any public utility is established, may, by ordinance, at any time zvithin one year before the expiration of any contract entered into under the provisions of sections 3644, 3982 and 3983 of the General Code between the municipality and such public utility with respect to the rate, * * * to be made * * * for any commodity * * * by such public utility, * * * proceed to fix the price * * * that such public utility may charge * * * for an ensuing period, as provided in sections 3644, 3982 and 3983 of the General Code.” Then follow the provisions for the filing of a complaint with the commission by dissatisfied parties.
The ordinance complained of in this case was not passed “at any time within one year before the expiration of any contract * * * between the municipality and such public utility with respect to the rate.”
We think it clear that a contract, made between a municipality and a public utility, in full compliance with express statutory provisions, before the passage of Section 614-44, General Code, is not affected by the provisions of that section, and that no steps can be taken under Section 614-44 et seq. until within one year of the expiration of the contract. A different construction would violate the express terms of the contract between the parties in 1905, in which the company agreed that the city *332 should have the power to fix the rates. For by the provisions of Section 614-44 et seq. it is provided that the commission may fix the rates to be charged, on a hearing of the complaint permitted to be filed with it.
There is not only nothing in Section 614-44 et seq. to indicate that the legislature intended to interfere with or abrogate valid contracts already in existence, but there is the express language we have quoted which demonstrates that there was no such intention. The purpose was that the new law should be put into operation as to contracts about to expire and those thereafter made.
Section 614-44 not only confers-upon the public utility the right to invoke the jurisdiction of the public utilities commission, when not satisfied with the price fixed by the municipality, but it also enables electors of the municipality (even if the public utility accepts the rate) to invoke the same jurisdiction; and the commission on the hearing may lower the rate paid to the company.
The parties had the right to make the contract and to rely on the enforcement of it as they made it. Who can say that the city or the company would have entered into the contract if they had realized that a board or commission not then contemplated might without their consent be after-wards created, by which an essential element might be altered? ' As was said by Judge Spear in City of Wellston v. Morgan, 59 Ohio St., 147, 157: “The paper presented undertakes to stipulate for the furnishing of light and an agreed price therefor, for ninety-nine years. The proposition is that *333 we now treat it as a contract for ten years; that is, that the court shall make a new contract for the parties for ten years, and then enforce it. How • can we say that the company would have incurred the great expense and outlay of money and labor, which the petition declares was incurred, for the period of ten years only ? And if the court were of opinion that probably the company would have been willing to so contract, where is there any authority in the court to now alter the terms that they did agree upon and then enforce them as changed ?” In that case the court say in the syllabus: “The only semblance of a contract between the City and the electric light company was in the form of an ordinance passed by the council, which undertook to grant to the company the exclusive use of the streets for the erection of its poles, et cetera, for the period of ninety-nine years, and to bind the City to purchase light of the company during that time at a stated sum per month.”
The contract of 1905, in the present case, having been entered into by the city in the exercise of contractual capacity and authority expressly conferred upon it, and having conferred upon the company valuable privileges and rights in the public streets and places of the city on the conditions named therein, is protected by the provisions of Section 10, Article I of the Federal Constitution, that no state shall pass any law impairing the obligation of contracts. A franchise is included within the broader term grant, and the same general principles are applicable to it in reference to the constitutional inhibition as to the impairment of the obligation *334 of contracts. 6 Ruling Case Law, 340; 12 Corpus Juris, 1009, and Cleveland v. Cleveland City Rd. Co., 194 U. S., 534.
It is urged that the creation of the public utilities commission is expressly authorized by Section 2, Article XIII of the Constitution, as adopted in 1912.
This court, in the exercise of its revisory jurisdiction under Section 2, Article IV of the Constitution, has given full recognition to the power and jurisdiction of the public utilities commission, and to the efficient aid it has given as an administrative agency of the government, but it is neither advisable nor possible to confer upon it power in disregard of rights protected by the guaranties of the constitution.
In Gunn v. Barry, 15 Wall. (82 U. S.), 610, it was held that a state can no more impair an existing contract by a constitutional provision than by a legislative act. Both are within the prohibition of the national constitution.
Counsel also urge that the right to establish rates by compulsion is distinguished from the power to contract for a rate; that the power of a municipality to regulate is a police power, and rests upon legislative grant, which may be modified by the legislature at will.
We are mindful that the police power is an essential and vital attribute of government to be exercised in the interest of the public health, safety and welfare. Government cannot, even if it would, divest itself of this inherent incident of sovereignty. The duty of its watchful exercise is a continuing one. But here is a matter of contract. It expresses *335 a meeting of minds on a subject which the parties were competent to contract about. The situation is one in which the city had been expressly given full power by the state to enter into an agreement touching all the matters covered by the terms of the contract, and, conceding that the grant of power to the city was subject to repeal or modification at the will of the legislature, no such modification had been made at the time the contract became binding on the parties.
As was said by the supreme court of the United States in Cleveland v. Cleveland City Railroad Company, supra, page 534:
“That in passing ordinances, based upon the grant of power referred to, the municipal council of Cleveland was exercising a portion of the authority of the State, as an agency of the State, cannot in reason be disputed. If, therefore, the ordinances passed after August, 1879, and referred to previously, which ordinances were accepted by the predecessors of the complainant, with whom it is in privity, constituted contracts in respect to the rates of fare to be thereafter charged upon the consolidated and extended lines (affected by the ordinances) as an entirety, it necessarily follows that the ordinance of October, 1898, impaired these contracts.
“The question for decision then is Did the consolidated ordinance of February, 1885, and the ordinances thereafter passed and accepted, already referred to, constitute binding contracts in respect to the rates of fare to be thereafter exacted upon *336 the consolidated and extended lines of the complainant ?
“That in the courts of Ohio the acceptance of an ordinance of the character of those just referred to is deemed to create a binding contract is settled.”
It was held in the above case that a consolidated ordinance of February, 1885, of the city, and ordinances thereafter passed by the municipality and accepted by the companies, constituted such binding contracts in respect to the rate of fare to be exacted on the lines of the company as to deprive the city of its right to exercise the reservations in the original ordinances as to changing rates of fare, and that the ordinance of October, 1898, reducing fare to be charged was void and unconstitutional within the impairment clause of the federal constitution. In the cases of Cincinnati v. Pub. Util. Comm., 96 Ohio St., 554, and 96 Ohio St., 270, the questions determined in this case were not presented to the court.
Counsel for defendant in error cite State, ex rel. Webster, v. Superior Court, 67 Wash., 37, in which case it was held that a city which granted a franchise to a telephone company, fixing rates, could not attack the constitutionality of a public utilities act passed thereafter, under which the rates were raised, on the ground that the contract in the franchise was impaired thereby. In that case, the case of Cleveland v. Cleveland City Rd. Co., supra, was relied on by counsel for the city. But the supreme court of Washington point out that in the Cleveland Railroad case express authority had been conferred on the city by the Ohio statute, while, in the
*337 Washington case, the power to fix rates was a right reserved to the legislature of the state by the constitution of that state and so was not incident to a freehold charter. See also Woodburn v. Public Service Commission, 82 Ore., 114, which is likewise cited by the defendant in error, where it was also held that the right was reserved to the state.
As we have seen, the state and federal courts have held that in Ohio “express and unmistakable authority” was conferred on the city to make a contract, such as is involved here, and during the life of the contract the parties operating under it are bound by its terms.
These views as to the contractual relations of the parties, whose interests are concerned in the proceeding, are conclusive of the case, and it is not necessary to decide the other questions suggested.
The order of the commission will be reversed.

Order reversed.

Nichols, C. J., Wanamaicer and Newman, JJ., concur.