**BIRCH v. McCOLGAN, Franchise Tax Commissioner of California, et al.**

No. 1430–B.

District Court, S. D. California, Central Division.

June 9, 1941.

§

360

George Acret, of Los Angeles, Cal., for plaintiff.

Earl Warren, Atty. Gen., and H. H. Linney, and Valentine Brookes, Deputy Attys. Gen., for defendant State officers.

No appearance for other defendants.

Before MATHEWS, Circuit Judge, and HOLLZER and BEAUMONT, District Judges.

MATHEWS, Circuit Judge.

This is an action by A. Otis Birch against nine State officers of California, namely, Charles J. McColgan, Franchise Tax Commissioner, Paul Peek, Secretary of State, Earl Warren, Attorney General, George R. Reilly, Fred E. Stewart, R. E. Collins, William G. Bonelli and Harry B. Riley, members of the State Board of Equalization, and John F. Dockweiler, District Attorney of Los Angeles, County; and against four other defendants, namely, Birch Securities Company, a Nevada corporation, Birch Holding Company, a Delaware corporation, M. Estelle C. Birch and R. R. Landrum. The complaint prays for interlocutory and permanent injunctions restraining the State officers from enforcing against Birch Securities Company the California Bank and Corporation Franchise Tax Act[1] (General Laws, and Supp. 1939, Act 8488), on the ground that the Act is unconstitutional; and, on the same ground, restraining Birch Securities Company, its officers and directors, from complying with the act or submitting to its

enforcement. The State officers have moved to dismiss the action for lack of jurisdiction and for failure to state a claim for which relief can be granted.[2] The application for an interlocutory injunction and the motion to dismiss the action have been heard and are now to be determined by this court, constituted as provided in § 266 of the Judicial Code, 28 U.S.C.A. § 380.

Pertinent sections of the California Bank and Corporation Franchise Tax Act are §§ 4, 5, 11, 13, 25, 27, 30, 31 and 32. Pertinent provisions of § 4 are in subdivisions (3), (4) and (5) thereof:

"(3) With the exception of financial corporations, every corporation doing business within the limits of this State and not expressly exempted from taxation by the provisions of the Constitution of this State or by this act, shall annually pay to the State, for the privilege of exercising its corporate franchises within this State, a tax according to or measured by its net income, to be computed, in the manner hereinafter provided, at the rate of 4 per centum upon the basis of its net income for the next preceding fiscal or calendar year. * * *

"(4) Any corporation organized to hold the stock or bonds of any other corporation or corporations, and not trading in such stock or bonds or other securities held, and engaging in no other activities than the receipt and disbursement of dividends from such stock or interest from such bonds, shall not be considered a corporation doing business in this State for the purposes of this act.

"(5) Every corporation not otherwise taxed in pursuance of this section and not expressly exempted by the provisions of this act or the Constitution of this State shall pay annually to the State a tax of twenty-five dollars."

Section 5 defines the term "doing business" as "actively engaging in any transaction for the purpose of financial or pecuniary gain or profit." Section 11 defines the term "income year" as "the calendar year or the fiscal year ending during such calendar year, upon the basis of which the [taxpayer's] net income is

---

[1] Stats.1929, p. 19, as amended by Stats.1929, p. 1555; Stats.1931, pp. 60, 64, 2225; Stats.1933, pp. 40, 687, 692, 869; Stats.1935, pp. 959, 995, 1245; Stats.1937, pp. 85, 2324; Stats.1939, p. 2934.

[2] Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, Rule 12(b).

computed," and defines the term "fiscal year" as "an accounting period of twelve months or less ending on the last day of any month other than December."

Section 13 provides: "Every bank and corporation subject to the tax imposed by this act shall, within two months and fifteen days after the close of its income year, transmit to the [franchise tax] commissioner a return in a form prescribed by him, specifying, for the income year, all such facts as he may by rule, or otherwise, require in order to carry out the provisions of this act."

Section 25 provides:

"As soon as practicable after the return is filed, the commissioner shall examine it and shall determine the correct amount of the tax. If the commissioner determines that the tax disclosed by the original return is less than the tax disclosed by his examination he shall mail notice to the taxpayer at its post-office address (which must appear on its return) of the additional tax proposed to be assessed against it. * * *

"Within sixty days after the mailing of said notice the taxpayer may file with the commissioner a written protest against the levy of the proposed additional tax, as computed by the commissioner, specifying therein the grounds upon which the protest is based. * * *

"If no such protest is so filed the amount of the tax shall be final upon the expiration of said sixty-day period. If a protest is so filed it shall be the duty of the commissioner to reconsider the computation and levy of the tax complained of, and if the taxpayer has so requested in its protest, it shall be the duty of the commissioner to grant said taxpayer, or its authorized representatives, an oral hearing. After consideration of the protest and the evidence adduced in the event of such oral hearing, the commissioner's action upon the protest shall be final upon the expiration of thirty days from the date when he mails to the taxpayer notice of his action, unless within that thirty-day period the taxpayer appeals in writing from the action of the commissioner to the State Board of Equalization. * * *

"When a deficiency has been determined and the tax has become final under the provisions of this section, the commissioner shall mail notice and demand to the taxpayer for the payment thereof, and such tax shall be due and payable at the expiration of ten days from the date of such notice and demand.

"A certificate by the commissioner or of said board, as the case may be, of the mailing of the notices specified in this section shall be prima facie evidence of the computation and levy of the deficiency in tax and of the giving of said notices."

Section 27 provides: "If, in the opinion of the commissioner, or the State Board of Equalization, as the case may be, there has been an overpayment of tax, penalty or interest by a taxpayer for any year for any reason, the amount of such overpayment shall be credited against any taxes then due from the taxpayer under this act, and the balance shall be refunded to the taxpayer. * * * No such credit or refund shall be allowed or made after four years from the last day prescribed for filing the return or after one year from the date of the overpayment, whichever period expires the later, unless before the expiration of such period a claim therefor is filed by the taxpayer. * * *"

Section 30 provides:

"No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding in any court against this State or against any officer thereof to prevent or enjoin the assessment or collection of any tax under this act but any taxpayer claiming that the tax computed and levied against it pursuant to section 25 of this act is void in whole or in part may bring an action against the commissioner for the recovery of the whole or any part of the amount paid. Such action must be filed within four years from the last date prescribed for filing the return or within one year from the date the tax was paid, whichever period expires the later; provided, that no action shall be filed for the recovery of a deficiency assessment unless the taxpayer has made protest to the commissioner of the computation and levy complained of under the provisions of section 25 hereof.

"Within ninety days after the mailing of the notice of the commissioner's action upon any refund claim, or in case of an appeal to the State Board of Equalization from the disallowance of any refund claim, within ninety days after the mailing of the notice of the board's determination of the appeal, the taxpayer may bring an action against the commissioner on

362

the grounds set forth in such claim for the recovery of the whole or any part of the amount claimed as an overpayment."

Section 31 provides:

"At any time within three years after the determination of liability for any tax, penalties, and interest, or any installment thereof, the commissioner may bring an action in a court of competent jurisdiction in the county of Sacramento in the name /of the people of the State of California to collect the amount delinquent, together with penalties, and interest * * *. The Attorney General or the counsel for the commissioner must prosecute such action, and the provisions of the Code of Civil Procedure, relating to the service of summons, pleadings, proofs, trials, and appeals are applicable to the proceedings, herein provided for. * * *

"At any time within which an action can be brought to collect any delinquent amounts as provided in the preceding paragraph, the commissioner may collect the tax, together with penalties and interest, in the following manner: The commissioner shall seize any personal property owned by the bank or corporation against whom the tax is assessed, and thereafter sell at public auction such property so seized, or a sufficient portion thereof, to pay the tax due hereunder, together with any interest, and any penalty or penalties imposed hereby for such delinquency, and any and all costs that may have been incurred on account of such seizure and sale. * * *"

Section 32 provides:

"(a) If any tax * * * due and payable upon notice and demand from the commissioner, together with penalties and interest thereon, is not paid on or before six o'clock p. m. on the last day of the eleventh month following the due date of such tax * * * if the delinquent taxpayer be a foreign bank or corporation its corporate powers, rights and privileges shall be suspended and shall be incapable of being exercised in this State for any purpose or in any manner.

"(b) The commissioner shall transmit the name of each such bank or corporation to the Secretary of State, and the suspension or forfeiture herein provided for shall thereupon become effective and the certificate of the Secretary of State shall be prima facie evidence of such suspension or forfeiture.

"(c) Any person * * * who transacts or attempts to transact any intrastate business in the State in behalf of any such foreign bank or corporation shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than two hundred fifty dollars and not exceeding one thousand dollars, or by imprisonment in the county jail not less than fifty days or more than five hundred days, or by both such fine and imprisonment. * * *

"(d) Every contract made in violation of this section is hereby declared to be voidable, at the instance of any party other than the taxpayer."

Plaintiff's application for an interlocutory injunction was made in and by his complaint, which is verified. The defendant State officers have filed an answer denying some of the allegations of the complaint, but their answer is not verified. The other defendants have not appeared. No evidence has been submitted by any of the defendants. For present purposes, therefore, the allegations of the complaint are taken as true. The facts there alleged are substantially as follows:

Plaintiff is and was at all pertinent times the owner and holder of 49% of the capital stock of Birch Holding Company, which is and was at all pertinent times the owner and holder of all the capital stock of Birch Securities Company. M. Estelle C. Birch and R. R. Landrum are and were at all pertinent times the owners and holders of 51% of the capital stock of Birch Holding Company. They and plaintiff together constitute, and did at all pertinent times constitute, the board of directors of Birch Holding Company and the board of directors of Birch Securities Company. They and plaintiff are and were at all pertinent times officers of both companies, plaintiff being president, M. Estelle C. Birch vice president, and Landrum secretary of each company.

Birch Securities Company (hereafter called the Company) is not and never was a financial corporation. It is not and never was actively engaged in any transaction for the purpose of financial or pecuniary gain or profit. It is and was at all pertinent times a corporation organized to hold the stock or bonds of other corporations. It has never traded in such stock or bonds or other securities held, nor has it engaged in any activity other than the

receipt and disbursement of dividends from such stock or interest from such bonds. Therefore, although it has an office in California, it is not and never was a corporation doing business in California, within the meaning of § 4, supra.[3]

On or about December 10, 1935, the Company transmitted to the Franchise Tax Commissioner, pursuant to § 13, supra, a return specifying, for its income year ended September 30, 1935, all facts required by the Commissioner, and paid for that year the tax disclosed by the return, namely, the minimum tax of $25 prescribed in § 4. On or about December 10, 1936, it made a similar return and paid a similar tax for its income year ended September 30, 1936. As the Company never did business in California, the minimum tax so paid by it was, for each of said years, the only tax for which it was liable. Hence the Commissioner could not lawfully assess or propose to assess any additional tax against the Company[4] for either of said years. It is presumed, therefore, that no such assessment was made or proposed. This presumption is strengthened by the fact—which the complaint expressly alleges—that no notice of any such proposed assessment was received by the Company.

On or about April 1, 1938, the Commissioner, under color of § 32, supra, transmitted the Company's name to the Secretary of State and stated to the Secretary that, with respect to its income years ended September 30, 1935, and September 30, 1936, the Company was a delinquent taxpayer—which was untrue. Because of that untrue statement, and for no other reason, the Secretary issued a certificate stating that the Company's corporate powers, rights and privileges[5] were suspended and forfeited. There was in fact no such suspension or forfeiture; for, under § 32, suspension or forfeiture occurs[6] only where there is actual delinquency, and in this case there was none.

On August 23, 1938, the Commissioner, under color of § 31, supra, brought an action (No. 58345) in the Superior Court of Sacramento County in the name of the people of the State of California to collect of the Company a tax of $6,336.14 for its income year ended September 30, 1935, and a tax of $1,137.63 for its income year ended September 30, 1936, a total of $7,473.77, with interest and costs. Said action No. 58345 was at all times and is now being prosecuted by the Attorney General.

To the complaint in said action No. 58345, the Company filed an answer and an amended answer. Said complaint falsely alleges[7] that the Company is and was at all times therein mentioned a corporation doing business in California; that, by reason thereof, it became and is liable for the taxes sought to be collected in said action; and that said taxes are now due and owing. The amended answer denies these allegations, states that no tax is due or owing by the Company, and prays that said action be dismissed.

On or about January 14, 1941, the Attorney General filed in said action No. 58345 a motion to strike the amended answer on the ground that, because of the suspension and forfeiture purportedly evidenced by the aforesaid certificate of the Secretary of State, the Company was not entitled to defend said action.[8] By letters dated January 14, 1941, and January 30, 1941, the Attorney General warned the Company's attorney that any appearance on the Company's behalf by its attorney or any of its officers "might constitute a misdemeanor"[9]—a warning which was, in effect, a threat.

---

[3] This and other conclusions stated in the opinion are based on the assumption that the allegations of the complaint are true. Both the assumption and the conclusions are for present purposes only. Both, on final hearing, may prove unwarranted.

[4] Section 25, supra.

[5] In the complaint, the Company's corporate powers, rights and privileges are spoken of as its "charter."

[6] Under § 32, suspension or forfeiture occurs, if at all, by operation of law, not by any act of the Secretary of State. The Secretary merely issues a certificate evidencing such suspension or forfeiture, and his certificate is prima facie evidence only.

[7] Since the allegations of the complaint in No. 58345 are contrary to and inconsistent with those of the complaint in the action here pending, and since the latter are, for present purposes, presumed to be true, the former are, for present purposes, presumed to be false.

[8] Boyle v. Lakeview Creamery Co., 9 Cal.2d 16, 68 P.2d 968; Ocean Park Bath House & Amusement Co. v. Pacific Auto Park Co., 37 Cal.App.2d 158, 98 P.2d 1068.

[9] Section 32, supra.

The Attorney General's letters having come to the attention of M. Estelle C. Birch and R. R. Landrum, they informed plaintiff that, because they feared prosecution under § 32, supra, they desired plaintiff (the Company's president) and the Company to desist from any activity which might subject them to such prosecution and from all activities in connection with the defense of said action No. 58345. Plaintiff thereupon demanded of the Company and its Board of Directors—consisting of himself, M. Estelle C. Birch and R. R. Landrum—that the Company defend and continue to defend said action No. 58345; that it file in said action a second amended answer challenging the constitutionality of the California Bank and Corporation Franchise Tax Act; "and/or that it apply to any other court of competent jurisdiction in order to test the constitutionality of the Act."

At a meeting held on February 18, 1941, the board considered plaintiff's demand and, by a vote of two to one,[10] refused to comply with it, resolving instead that the Company should "engage in no activities whatsoever"—all because a majority of the board[11] feared prosecution under § 32. Plaintiff made a similar demand on the Company's sole stockholder (Birch Holding Company) and its board of directors,[12] with a similar result. Thereafter, on February 27, 1941, this action was commenced.

The complaint alleges that the California Bank and Corporation Franchise Tax Act is unconstitutional in that it attempts to deprive the Company of its property without due process of law and thus violates the Fourteenth Amendment. On that ground, among others, the complaint prays for interlocutory and permanent injunctions (1) restraining the defendant State officers (a) from assessing against or collecting from the Company any tax imposed by the act, (b) from maintaining or attempting to maintain any suspension or forfeiture of the Company's corporate powers, rights or privileges, and (c) from commencing or maintaining against the Company or any officer, director or agent of the Company any prosecution for or on account of the exercise of such powers, rights or privileges; and (2) restraining the Company, its officers and directors from complying with the act or submitting to its enforcement. The complaint further prays that, by our final judgment, the act be declared unconstitutional, and that the purported suspension and forfeiture hereinabove referred to be declared void and of no effect.

It does not appear that the defendant State officers are now assessing or attempting to assess, or intend to assess, any tax against the Company. There is, therefore, no present reason for enjoining such assessment. It does not appear that said officers are now collecting or attempting to collect, or intend to collect, any tax from the Company other than those claimed to be due and owing for the years ended September 30, 1935, and September 30, 1936. There is, therefore, no present reason from enjoining the collection of any other tax. It does not appear that said officers are now collecting or attempting to collect, or intend to collect, any tax from the Company for the years ended September 30, 1935, and September 30, 1936, otherwise than by said action No. 58345. There is, therefore, no present reason for enjoining collection by other means.[13]

It does appear that, by said action No. 58345, said officers were, at the time *this* action was commenced, and are now, attempting to collect taxes from the Company for the years ended September 30, 1935, and September 30, 1936. Hence an injunction restraining such collection would constitute a stay of proceedings in a State court—a stay which, not being authorized by any law relating to proceedings in bankruptcy, is prohibited by § 265 of the Judicial Code, 28 U.S.C.A. § 379.[14] Hull v. Burr, 234 U.S. 712, 722–725, 34 S.Ct. 892, 58 L.Ed. 1557; Essanay Film Mfg. Co. v. Kane, 258 U.S. 358, 360–362, 42 S. Ct. 318, 66 L.Ed. 658; Kline v. Burke Construction Co., 260 U.S. 226, 228–235, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077;

---

[10] M. Estelle C. Birch and R. R. Landrum voted for, and plaintiff against, the resolution refusing compliance with plaintiff's demand.

[11] M. Estelle C. Birch and R. R. Landrum.

[12] M. Estelle C. Birch, R. R. Landrum and plaintiff.

[13] See second paragraph of § 31, supra.

[14] "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 88–90, 43 S.Ct. 480, 67 L.Ed. 871; Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 73 L.Ed. 669; Monamotor Oil Co. v. Johnson, 292 U.S. 86, 97, 54 S.Ct. 575, 78 L.Ed. 1141; Hill v. Martin, 296 U.S. 393, 403, 56 S.Ct. 278, 80 L.Ed. 293; Kohn v. Central Distributing Co., 306 U.S. 531, 534, 59 S.Ct. 689, 83 L.Ed. 965; Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 8, 60 S.Ct. 215, 84 L.Ed. 537.

The prayer for an interlocutory injunction restraining the assessment and collection of taxes under the California Bank and Corporation Franchise Tax Act is accordingly denied.

■ It does not follow, however, that the action should be dismissed; for this is not merely an action to enjoin the assessment and collection of taxes. It is also an action to enjoin the wrongful acts which, according to the complaint, the State officers are committing and threatening to commit under color of § 32, supra. It appears from the complaint that, under color of § 32, said officers are asserting and threatening to enforce a purported—but non-existent—suspension and forfeiture of the Company's corporate powers, rights and privileges and are threatening to prosecute the Company's officers, directors and agents if they, in its behalf, exercise or attempt to exercise any of said powers, rights or privileges, even to the extent of defending or attempting to defend said action No. 58345. It further appears that the threatened acts will, if not enjoined, preclude any such defense, and that, lacking such defense, the Company will be deprived of its property—$7,473.77, with interest and costs—without due process of law.

Thus the action is one of a civil nature in equity where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000 and arises under the Constitution of the United States. It is not an action to enjoin, suspend or restrain the enforcement, operation or execution of any order of an administrative board, commission or rate-making body, or to enjoin, suspend or restrain any action in compliance with any such order. Nor is it merely an action to enjoin, suspend or restrain the assessment, levy or collection of a tax. Clearly, therefore, this court has jurisdiction. Judicial Code § 24(1),[15] 28 U.S.C.A. § 41(1).

■ We next consider whether the wrongful acts which, according to the complaint, the State officers are committing and threatening to commit under color of § 32 should be enjoined. The application for such an injunction is opposed on the ground that the Company has an adequate remedy in the State courts. This contention—coming from an Attorney General who, according to the complaint, is threatening to prosecute any officer, director or agent of the Company who may, in its behalf, make any appearance in a State court—cannot be taken seriously. A "remedy" the invocation of which entails such consequences is no remedy at all.

■ It is no answer to say that the Company could, by paying the disputed taxes, obtain a "revivor" of its corporate powers, rights and privileges;[16] for it appears from the complaint that, in order to obtain money for that purpose, the Company would have to transact intrastate business in California, which, of course, it could only do through officers, directors or agents acting in its behalf. Any such transaction would constitute what the State

[15] Section 24 provides:

"The district courts shall have original jurisdiction as follows:

"(1) * * * Of all suits of a civil nature, at common law or in equity * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States. * * * Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the enforcement, operation, or execution of any order of an administrative board or commission of a State, or

any rate-making body of any political subdivision thereof, or to enjoin, suspend, or restrain any action in compliance with any such order, where [certain conditions exist]. Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State."

[16] Such "revivors" are provided for in § 33 of the California Bank and Corporation Franchise Tax Act.

366

officers contend is a misdemeanor, and would undoubtedly be prosecuted under § 32.

The State officers invoke the "familiar rule that courts of equity do not ordinarily restrain criminal prosecutions."[17] That rule, however, has its exceptions. Such an exception exists where threatened prosecutions will, if not restrained, cause irreparable loss through the taking of property without due process of law. Ex parte Young, 209 U.S. 123, 161–168, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S. 932, 14 Ann.Cas. 764; Missouri Pacific Ry. Co. v. Tucker, 230 U.S. 340, 349, 33 S.Ct. 961, 57 L.Ed. 1507; Truax v. Raich, 239 U.S. 33, 37–39, 36 S.Ct. 7, 60 L.Ed. 131, L.R.A.1916D, 545, Ann.Cas.1917B, 283; Terrace v. Thompson, 263 U.S. 197, 214–216, 44 S.Ct. 15, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 143, 44 S.Ct. 257, 68 L.Ed. 596; Cline v. Frink Dairy Co., 274 U.S. 445, 451, 452, 47 S.Ct. 681, 71 L.Ed. 1146; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111. The allegations of the complaint—here assumed to be true—bring this case within that exception.

In the circumstances here disclosed, refusal by the Company's directors to defend said action No. 58345 or to bring an action in the Company's name in a State court of California was excusable. Not so their refusal to bring an action in this court; for, although they feared and were justified in fearing that any appearance by or for the Company in a State court action would subject them to prosecution, there was no ground for any such fear with respect to an action brought in this court. The Company's interests clearly required that such an action be brought. Refusal to bring it constituted a breach of trust, which warranted the bringing of

a stockholder's action. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 318–323, 56 S.Ct. 466, 80 L.Ed. 688.[18]

This action, brought by plaintiff, is a stockholder's action; for, although plaintiff is not a stockholder of the corporation (Birch Securities Company) in whose behalf the action is brought, he is a stockholder of that corporation's sole stockholder (Birch Holding Company). The Holding Company and its directors having refused to act, plaintiff was and is entitled to maintain this action in behalf of the Securities Company. Piccard v. Sperry Corp., D.C.S.D.N.Y., 30 F.Supp. 171, 173.

We conclude that the State officers' motion to dismiss the complaint should be denied, and that an interlocutory injunction should issue, restraining said officers from maintaining, enforcing, giving effect to, or attempting to maintain, enforce or give effect to, any suspension or forfeiture or purported suspension or forfeiture of the corporate powers, rights or privileges of Birch Securities Company; from prosecuting or threatening to prosecute any officer, director or agent of said Company for or on account of any exercise of said powers, rights or privileges; and from in any manner preventing or attempting to prevent said Company from commencing, maintaining or defending any action in any court of the State of California.

Such an injunction will dispel the fears which have caused the Company's officers and directors to refrain from defending said action No. 58345 or transacting other business in its behalf. We assume that, being freed from such fears, the Company's officers and directors will do their duty, and that no injunction against them or the Company will be necessary. The prayer for an interlocutory in-

[17] Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 49, 61 S.Ct. 418, 420, 85 L. Ed. ——.

[18] See, also, Dodge v. Woolsey, 18 How. 331, 340–346, 15 L.Ed. 401; Greenwood v. Union Freight R. Co., 105 U.S. 13, 16, 26 L.Ed. 961; Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 553–554, 15 S.Ct. 673, 39 L.Ed. 759; Smyth v. Ames, 169 U.S. 466, 515–518, 18 S. Ct. 418, 42 L.Ed. 819; Cotting v. Kansas City Stock Yards Co., 183 U.S. 79, 112–113, 22 S.Ct. 30, 46 L.Ed. 92; Doctor v. Harrington, 196 U.S. 579, 587, 589, 25 S.Ct. 355, 49 L.Ed. 606; Delaware & Hudson Co. v. Albany & Susquehanna R. Co., 213 U.S. 435, 445–453, 29 S.Ct. 540, 53 L.Ed. 862; Brushaber v. Union Pacific R. Co., 240 U.S. 1, 9, 10, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713; Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 200–202, 41 S.Ct. 243, 65 L.Ed. 577; Hill v. Wallace, 259 U.S. 44, 60–62, 42 S.Ct. 453, 66 L.Ed. 822; Carter v. Carter Coal Co., 298 U.S. 238, 286, 287, 56 S.Ct. 855, 80 L.Ed. 1160.

junction against the Company, its officers and directors, is accordingly denied, without prejudice.

An order will be entered in accordance with this opinion.