### BENDIX PRODUCTS CORPORATION v. BEMAN et al.

### No. 15039.

District Court, N. D. Illinois, E. D.
March 24, 1936.

Cassels, Potter & Bentley, of Chicago, Ill., for plaintiff.

Robert B. Watts, Associate Gen. Counsel for National Labor Relations Board, of New York City, for defendants.

BARNES, District Judge.

This is a suit by Bendix Products Corporation against L. W. Beman, individually and as Regional Director of the National Labor Relations Board for the Thirteenth Region; Harold Cranefield, individually and as attorney for said board; and Joseph Madden, John M. Carmody, and Edwin S. Smith, individually and as members of said board.

Bendix Products Corporation is an Indiana corporation and has its sole office and manufactory in South Bend, Ind. It is there engaged in the manufacture of carburetors, brakes, and other automotive and aircraft parts and accessories, and in its plant employs 3,540 persons known as production employees, who are engaged exclusively in the manufacture of raw materials (including pig iron, steel, copper, aluminum, zinc, antimony, and other materials) into finished automotive and aircraft parts and accessories. In the manufacture of these products, plaintiff's plant consumes large quantities of coal, acids, sand, and other raw materials. The manufactured articles bear no resemblance to the raw materials from which they are manufactured. Such raw materials are of relatively little value in comparison with the value of the finished products, and this great increase in value is due to the manufacturing operations performed at plaintiff's plant.

Certain of plaintiff's production employees are members of a trade union of the vertical type, known as Local No. 9, International Union United Automobile Workers of America, which organization is affiliated with American Federation of Labor; others are members of a trade union, also of the vertical type, known as Bendix Employees' Association, which organization is not affiliated with American Federation of Labor; others are affiliated with other labor organizations, known as craft unions; and others are not members of any trade union.

Plaintiff alleges that, for a long time, it has met and dealt, and now meets and deals, for the purposes of collective bargaining in respect of rates of pay, hours of labor, and other conditions of employment, with the representatives of its employees, in all instances where such employees have indicated that they desire plaintiff to deal with such representatives, and at all times in the past have so dealt, and now so deals, with the representatives chosen by the members of each of the above-named labor organizations. Plaintiff further alleges that it has in the past met and dealt, and now meets and deals, with those of its employees who desire to bargain individually with it; that plaintiff now has outstanding contracts of employment with employees who are members of said Local No. 9, with employees who are members of said Bendix Employees' Association, with employees who are members of other labor organizations, and with individual employees who are members of no labor organization; and that, prior to the incidents hereinafter referred to, plaintiff's relations with all such employees were harmonious and mutually satisfactory.

In July, 1935, shortly after the approval of the National Labor Relations Act (29 U.S.C.A. §§ 151–166), Local No. 9 made a demand on plaintiff that the plaintiff deal with its representatives as the exclusive representatives of all production employees

in plaintiff's plant. This, the plaintiff refused to do on the ground that to accede to the request would deprive its production employees who are not members of Local No. 9 of their right and freedom to contract with plaintiff, and would also deprive plaintiff of its right to make individual agreements with its employees. On November 22, 1935, plaintiff was served with written notice, dated the preceding day and signed by L. W. Beman, as Regional Director for the Thirteenth Region, stating that a petition had been filed with National Labor Relations Board by Local No. 9 alleging that a question affecting commerce. had arisen concerning the representation of the employees engaged in production at an hourly wage in the plant of the plaintiff in South Bend and requesting that National Labor Relations Board investigate the controversy and certify the name or names of the representatives that have been designated or selected by the employees. The notice further stated that, it appearing to National Labor Relations Board that a question affecting commerce had arisen concerning the representation of employees engaged in production at an hourly wage in plaintiff's plant, a hearing would be conducted before the board, by the trial examiner, upon the question on December 5, 1935. Plaintiff received no notice of any hearing before the board prior to the receipt of the notice on November 22, 1935.

Plaintiff alleges, on information and belief, that no hearing was held and no evidence whatsoever was adduced by or before the board as a basis for the finding contained in the notice, to the effect that a question affecting commerce had arisen concerning the representation of plaintiff's employees.

On November 27, 1935, plaintiff filed with defendant L. W. Beman, Regional Director for the Thirteenth Region, its motion to dismiss the proceedings referred to in the motion on the ground that the board had no jurisdiction of plaintiff or the subject-matter of the proceeding and that National Labor Relations Act was unconstitutional. On December 17, 1935, after several continuances, the hearing contemplated by the notice was conducted by an examiner for the board, at which hearing plaintiff again moved that the proceedings be dismissed and that the hearing be terminated on the grounds set forth in the motion. Notwithstanding the objections, the hearing proceeded, with the result that, on January 29, 1936, the board made and issued an order entitled "Direction of Election," wherein it is recited that, "The Board having found that a question affecting commerce has arisen concerning the representation of employees of the Bendix Products Corporation, South Bend, Indiana, within the meaning of Section 9, subdivision (c) and Section 2, subdivision (6) and (7) of the National Labor Relations Act," and ordered that an election by secret ballot be conducted within ten days under the direction of defendant L. W. Beman, Regional Director, among all employees of the plaintiff paid on an hourly basis, to determine whether they desired to be represented by Local No. 9 or by Bendix Employees' Association.

Plaintiff filed and presented at the hearing a verified answer. The trial examiner overruled plaintiff's motion to dismiss the proceeding.

Plaintiff alleges that the facts are, and that at the hearing it appeared: That all of the production employees were and are exclusively engaged in wholly local work in manufacturing the products of plaintiff in its plant at South Bend; that the production employees were not and are not engaged in commerce with foreign nations, among the several states, or with the Indian tribes; that no question or controversy respecting or in any way affecting such commerce had arisen; that plaintiff has been and is bargaining collectively with its employees through representatives of their own choosing; that no controversy existed or now exists between plaintiff and its employees; that neither Bendix Employees' Association nor the independent production employees desire that an election be held or desire to be represented by Local No. 9 or any party or organization which may be selected to represent all employees; and that the Bendix Employees' Association does not desire to represent all the employees in plaintiff's plant, even if chosen by the majority of such employees for such purpose.

Defendant L. W. Beman, on January 31, 1936, caused to be served on plaintiff a subpœna duces tecum, by the terms of which plaintiff is required to produce its payroll before him as Regional Director on February 4, 1936. (When the motion for a preliminary injunction was first presented to this court it was agreed between

the parties that the subpœna should be withdrawn and that the proceeding before the board should stand in status quo until the court should have opportunity to hear and decide the motion for a preliminary injunction.)

Plaintiff alleges that, unless restrained by this court, defendant L. W. Beman will hold an election amongst the employees in plaintiff's plant; that the holding of such election, regardless of the results thereof, will stir up strife, contention, and ill will among plaintiff's employees, and will be destructive of plaintiff's rights to the continuance of the existing amicable and satisfactory relationships between it and its employees, and will impair the morale and efficiency of such employees, and will lessen the efficiency of the operation of plaintiff's plant, all of which will result in substantial and irreparable damage to the plaintiff far in excess of $3,000; that the pendency of the election, and in general the intermeddling of the defendants with the labor relations existing between plaintiff and its employees, has fostered and stirred up a feeling of rivalry and ill will between the various groups of plaintiff's employees; and that, if the election and intermeddling are not restrained, the ill will and bad feeling will be intensified and plaintiff will suffer further serious losses due to the impaired efficiency of its employees, occasioned thereby, and may be subjected to the risk of damage to and destruction of valuable physical properties as a result of acts of violence attendant upon any such election, or as a result of any order of the defendant board following such election.

Plaintiff further alleges that the National Labor Relations Act violates certain provisions of the Constitution of the United States and Amendments thereto, which will be hereafter specified, and is therefore void; that the act can have no application to the relationship of employer and employees engaged in manufacturing; that plaintiff has no adequate remedy at law, and is threatened with irreparable injury.

Plaintiff's bill prays a preliminary and permanent injunction, restraining defendants from holding the proposed election, from further enforcement of the National Labor Relations Act against it, and from interfering with the conduct of the plaintiff's business.

The plaintiff moved for a preliminary injunction on its sworn bill. L. W. Beman, individually, and as Regional Director, and Harold Cranefield, individually, appeared and filed their affidavit, which they denominate a return to the motion. They also filed an affidavit of William M. Leiserson, chairman of the National Mediation Board, who says that elections of the kind here contemplated are effective in preventing labor disputes. These defendants also filed a motion to dismiss the bill on the ground, among others, that it does not show irreparable injury and does show that the plaintiff has an adequate remedy at law.

The pertinent portions of the National Labor Relations Act are set forth in the margin.*

---

*"Definitions.

"Sec. 2. When used in this Act [sections 151 to 166 of this title]—* * *

"(3) The term 'Employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless the Act [chapter] explicitly states otherwise. * * *

"(4) The term 'representatives' includes any individual or labor organization.

"(5) The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

"(6) The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country.

"(7) The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.

"(8) The term 'unfair labor practice' means any unfair labor practice listed in section 8 [section 158 of this title].

"(9) The term 'labor dispute' includes any controversy concerning terms, ten-

It is apparent, from a reading of the National Labor Relations Act, that, to justify the legislation, Congress relied upon the Commerce Clause of the Constitution, that is, the power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Article 1, § 8, cl. 3.

Defendants contend that plaintiff's "business is one whose economic existence is tied up completely with a constant flow of materials and products from and into the channels of interstate commerce" and that "the Act is clearly applicable not only to interstate transportation and communication systems but to industries engaged pre-

---

ure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

"(10) The term 'National Labor Relations Board' means the National Labor Relations Board created by section 3 of this Act [section 153 of this title]." (29 U.S.C.A. § 152 (3–10.)

"National Labor Relations Board.

"Sec. 3. (a) There is hereby created a board, to be known as the 'National Labor Relations Board' (hereinafter referred to as the 'Board'), which shall be composed of three members, who shall be appointed by the President, by and with the advice and consent of the Senate." (29 U.S.C.A. § 153 (a).

"Sec. 4. * * * The Board shall appoint * * * such attorneys, examiners, and regional directors * * * as it may from time to time find necessary for the proper performance of its duties and as may be from time to time appropriated for by Congress." (29 U.S.C.A. § 154.)

"Sec. 5. The principal office of the Board shall be in the District of Columbia, but it may meet and exercise any or all of its powers at any other place. The Board may, by one or more of its members or by such agents or agencies as it may designate, prosecute any inquiry necessary to its functions in any part of the United States." (29 U.S.C.A. § 155.)

"Sec. 6. (a) The Board shall have authority from time to time to make, amend, and rescind such rules and regulations as may be necessary to carry out the provisions of this Act [chapter]." (29 U.S.C.A. § 156.)

"Rights of Employees.

"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." (29 U.S.C.A. § 157.)

"Sec. 8. It shall be an unfair labor practice for an employer—

"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [section 157 of this title].

"(2) To dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: Provided, That subject to rules and regulations made and published by the Board pursuant to section 6 (a) [section 156 of this title], an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay.

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this Act [chapter], or in the National Industrial Recovery Act (U.S.C., Supp. VII, title 15, secs. 701–712), as amended from time to time [sections 701 to 712 of Title 15], or in any code or agreement approved or prescribed thereunder, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this Act [chapter] as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 9 (a) [section 159 (a) of this title], in the appropriate collective bargaining unit covered by such agreement when made.

"(4) To discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act [chapter].

"(5) To refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9 (a) [section 159 (a) of this title]." (29 U.S.C.A. § 158.)

"Representatives and Elections.

"Sec. 9 (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours

dominantly in interstate commerce," and that, accordingly, the defendants may, under the act, lawfully deal with the relation of plaintiff and its production employees. This is the familiar, but fallacious, argument which would, by judicial interpretation and construction, amend the Commerce Clause of the Constitution by striking therefrom the words "with foreign Nations, and among the several States, and with the Indian tribes," so that it shall read, simply, "Congress shall have power to regulate commerce," and which would broaden the definition of "Commerce" to include manufacturing, mining, agriculture, and, in fact, most of the activities of modern life.

of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer.

"(b) The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act [chapter], the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

"(c) Whenever a question affecting commerce arises concerning the representation of employees, the Board may investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. In any such investigation, the Board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section 10 [section 160 of this title] or otherwise, and may take a secret ballot of employees, or utilize any other suitable method to ascertain such representatives.

"(d) Whenever an order of the Board made pursuant to section 10 (c) [section 160 (c) of this title] is based in whole or in part upon facts certified following an investigation pursuant to subsection (c) of this section, and there is a petition for the enforcement or review of such order, such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed under subsections 10 (e) or 10 (f) [subsections 160 (e) or 160 (f) of this title], and thereupon the decree of the court enforcing, modifying, or setting aside in whole or in part the order of the Board shall be made and entered upon the pleadings, testimony, and proceedings set forth in such transcript." (29 U.S.C.A. § 159.)

"Prevention of Unfair Labor Practices.

"Sec. 10. (a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8 [section 158]) affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise.

"(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint. * * *

"(c) * * * If upon all the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act [chapter]." Such order may further require such person to make reports from time to time showing the extent to which it has complied with the order. * * *

"(e) The Board shall have power to petition any circuit court of appeals of the United States (including the Court of Appeals of the District of Columbia), or if all the circuit courts of appeals to which application may be made are in vacation, any district court of the United States (including the Supreme Court of the District of Columbia), within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall certify and file in the court a transcript of the entire record in the proceeding, including the pleadings and testimony upon which such order was entered and the findings and order of the Board. Upon such filing, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question

**64**

The relationship with which the defendants propose to deal is a relationship between the plaintiff and its production employees, who are engaged in making for plaintiff, in its plant in Indiana, finished automobile and airplane parts and accessories from raw materials, that is, manufacturing. Manufacturing is not commerce, nor does the fact that the things manufactured are afterwards to be shipped or used in interstate commerce make their production a part thereof. Hammer v. Dagenhart, 247 U.S. 251, 272, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann.Cas. 1918E, 724; Arkadelphia Co. v. St. Louis, S. W. R. Co., 249 U.S. 134, 151, 39 S.Ct. 237, 63 L.Ed. 517; Utah Power & L. Co. v. Pfost, 286 U.S. 165, 181, 52 S.Ct. 548, 76 L.Ed. 1038. "Commerce succeeds to manufacture, and is not a part of it." U. S. v. E. C. Knight Co., 156 U.S. 1, 15 S.Ct. 249, 253, 39 L.Ed. 325. Even if it be assumed to be a fact that "a question has arisen concerning the representation of employees of" the plaintiff, such question has not arisen in interstate commerce. It

determined therein, and shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony, and proceedings set forth in such transcript a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board. * * * The findings of the Board as to the facts, if supported by evidence, shall be conclusive. . * * * The jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the appropriate circuit court of appeals if application was made to the district court as hereinabove provided, and by the Supreme Court of the United States upon writ of certiorari or certification as provided in sections 239 and 240 of the Judicial Code, as amended [sections 346 and 347 of Title 28].

"(f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any circuit court of appeals of the United States in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the Court of Appeals of the District of Columbia, by filing in such court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith served upon the Board, and thereupon the aggrieved party shall file in the court a transcript of the entire record in the proceeding, certified by the Board, including the pleading and testimony upon which the order complained of was entered and the findings and order of the Board. Upon such filing, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e), and shall have the same exclusive jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and

proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board; and the findings of the Board as to the facts, if supported by evidence, shall in like manner be conclusive." (29 U.S.C.A. § 160 (a, b, c, e, f.)

"Investigatory Powers.

"Sec. 11. For the purpose of all hearings and investigations, which, in the opinion of the Board, are necessary and proper for the exercise of the powers vested in it by section 9 · and section 10 [sections 159 and 160 of this title]—

"(1) The Board, or its duly authorized agents or agencies, shall at all reasonable. times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. * * *

"(2) In case of contumacy or refusal to obey a subpena issued to any person, any District Court of the United States or the United States courts of any Territory or possession, or the Supreme Court of the District of Columbia, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof." (29 U.S.C.A. § 161 (1, 2).

"Limitations.

"Sec. 13. Nothing in this Act [chapter] shall be construed so as to interfere with or impede or diminish in any way the right to strike." (29 U.S.C.A. § 163.)

has arisen in a manufacturing process carried on wholly within the state of Indiana.

■ A consideration of the cases dealing with the so-called "flow," "current," or "stream" of interstate commerce, beginning with Swift & Co. v. U. S., 196 U.S. 375, 390, 25 S.Ct. 276, 49 L.Ed. 518, and ending with Schechter Poultry Corporation v. U. S., 295 U.S. 495, 543, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, discloses situations where a certain commodity, such as grain or livestock, flows in a steady stream or current of interstate commerce from one part of the country to another, with little or no change in its form or characteristics. We do not find, as in the case at bar, raw materials being gathered together, some from within and some from without the state, and by the application of a large amount of labor, of relatively great value as compared with the value of the raw materials, converted into finished products, consisting of complicated mechanisms, which finished products are designed partly for intrastate and partly for interstate commerce. It is concluded, accordingly, that it cannot be said that the question has arisen in a manufacturing process which is within the "flow," "current," or "stream," of interstate commerce, as those words are used in the cases.

■ Neither does the question directly "affect" interstate commerce. Its effect on commerce is merely indirect and incidental. The language of Mr. Chief Justice Hughes in Schechter Poultry Corporation v. U. S., supra, is applicable here (295 U.S. 495, at pages 548, 549, 55 S.Ct. 837, 851, 79 L.Ed. 1570, 97 A.L.R. 947 (italics supplied):

"The distinction between direct and indirect effects of intrastate transactions upon interstate commerce must be recognized as a fundamental one, essential to the maintenance of our constitutional system. * * *

"If the federal government may determine the wages and hours of employees in the internal commerce of a state, because of their relation to cost and prices and their indirect effect upon interstate commerce, it would seem that a similar control might be exerted over other elements of cost, also affecting prices, such as the number of employees, rents, advertising, methods of doing business, etc. All the processes of production and distribution that enter into cost could likewise be controlled. * * * The government also makes the point that efforts to enact state legislation establishing high labor standards have been impeded by the belief that, unless similar action is taken generally, commerce will be diverted from the states adopting such standards, and that this fear of diversion has led to demands for federal legislation on the subject of wages and hours. The apparent implication is that the federal authority under the commerce clause should be deemed to extend to the establishment of rules to govern wages and hours in intrastate trade and industry generally throughout the country, thus overriding the authority of the states to deal with domestic problems arising from labor conditions in their internal commerce.

"It is not the province of the Court to consider the economic advantages or disadvantages of such a centralized system. *It is sufficient to say that the Federal Constitution does not provide for it.* * * * The authority of the federal government may not be pushed to such an extreme as to destroy the distinction, which the commerce clause itself establishes, between commerce 'among the several States' and the internal concerns of a state."

■ The National Labor Relations Act, if it be so construed as to warrant interference with and control of plaintiff's relation with its production employees, cannot be sustained as valid legislation under the Commerce Clause, and is in violation of the Tenth Amendment as an invasion of the control over purely local affairs thereby reserved to the states and to the people.

■ But, say the defendants, in effect, even though it be conceded, for the sake of argument only, that there are cases to which the act is not applicable and that the "question concerning the representation of employees of" plaintiff may be one of such cases, yet there are cases to which the act is applicable, and the court must assume that the board, and if not the board then the reviewing court, will decide that there is no jurisdiction in the instant case, and that, accordingly, the plaintiff has an adequate remedy at law and this court may not restrain the action of the board. The board has already decided the question of jurisdiction, and adversely to the contentions of the plaintiff. The board's order of January 29, 1936, recites "The Board, having found

that a question affecting commerce has arisen concerning the representation of employees of the Bendix Products Corporation * * * it is hereby directed, etc." But, the defendants say, the court must assume that the board, or the Circuit Court of Appeals on review, will correct this error, if it be an error, and, accordingly, the plaintiff has an adequate remedy at law.

It has been noted that the board has heretofore considered and decided, adversely to plaintiff, the question of jurisdiction. It is now to be noted that the Board has considered and decided, adversely to plaintiff, another question, namely, "Whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of this Act, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." By its order of January 29, 1936, the board directs that an election be conducted "among all employees of the Bendix Products Corporation paid on an hourly basis, except supervisory employees having authority to hire or discharge, clerical employees, policemen and nurses." The board has, accordingly, pursuant to section 9(b) of the act, determined the unit appropriate for the purposes of collective bargaining, and has apparently determined that that unit is a subdivision of the employer unit or plant unit. It will be observed that this unit will presumably, because of the nature of plaintiff's enterprise, comprise a large number of highly skilled craftsmen and also a large number of unskilled workers. Whether the determination is wise, the court does not know, and is probably unqualified to decide. But the plaintiff says the determinations of the board, in respect of jurisdiction and in respect of the extent of the unit for collective bargaining, are both erroneous, unwise, and unjust.

Implicit in the question of jurisdiction is the question as to whether all enterprise in this country is hereafter to be under the supervision of federal courts as to rates of pay, wages, hours of employment, and other conditions of employment of the workers engaged therein, or is to remain free from the interference of courts in these and other matters, except when extraordinary conditions exist. Implicit in the power to determine the unit appro-

priate for the purposes of collective bargaining is the power to gerrymander, and thereby to aggrandize or crush a labor organization. These observations are made merely to indicate the importance of the questions. And yet the act makes no provision for judicial review of the action of the board on these questions. Incidentally, it is observed that the court cannot find in the act any provision for the preservation in writing of the testimony taken by or on behalf of the board on these questions.

The act, in section 10(e) and (f), makes express provisions for judicial review of the cease and desist orders of the board relating to unfair labor practices, and in section 9(d) makes provision for a belated judicial review of the action of the board in certifying, pursuant to section 9(c) of the act, the names of the representatives designated or selected for the purposes of collective bargaining by the majority of the employees, but *only* whenever an order of the board made pursuant to section 10(c) is called in question. (There are but two kinds of orders of the board made pursuant to section 10(c)—orders directing persons to cease and desist from unfair labor practices as defined in the act, and orders dismissing petitions for such cease and desist orders.) This action of the Congress, which indicates that it had judicial review in mind and provided for it in certain cases and refrained from providing for it in others, leads to the conclusion that no judicial review was intended in these other cases. This conclusion is reached in spite of the reports of congressional committees and the remarks of individual members on the bill for the act. The act of Congress speaks louder than the words of its committees or members. The act permits no judicial review of the action of the board in respect of its jurisdiction and in determining the units appropriate for the purposes of collective bargaining. Accordingly, the plaintiff has no remedy at law. Chicago, etc., R. Co. v. Minnesota, 134 U.S. 418, 457, 10 S.Ct. 462, 702, 33 L.Ed. 970; American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 110, 23 S.Ct. 33, 47 L.Ed. 90; Wadley Southern R. Co. v. Georgia, 235 U.S. 651, 661, 35 S.Ct. 214, 59 L.Ed. 405; Waite v. Macy, 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892; Oklahoma Operating Co. v. Love, 252 U.S. 331, 336, 337, 40 S.Ct. 338, 64 L.Ed. 596; Ohio

Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908; Southern R. Co. v. Virginia, 290 U.S. 190, 194, 54 S.Ct. 148, 78 L.Ed. 260.

Let it be assumed, for the sake of the argument, that the foregoing conclusion is erroneous and that the courts will hold that the act provides for a judicial review of the action of the board in respect of its jurisdiction and in determining the unit appropriate for the purposes of collective bargaining. Let it be assumed that the courts will hold that such review can be had as an incident of the judicial review provided for by section 9(d). In order that section 9(d) may operate, the following facts must exist: (1) There must be an order under section 10(c), which is either an order that some person cease and desist from an unfair labor practice as defined in the act, or an order dismissing a petition for such a cease and desist order; (2) such order under section 10(c) must be based in whole or in part upon facts certified following an investigation pursuant to section 9(c), which section provides that whenever a question affecting commerce arises concerning the representation of employees the board may investigate and certify to the parties the names of the representatives that have been selected and as a part of such investigation may hold an election; and (3) a petition must be filed for the enforcement or review of the order under section 10(c). In other words, section 9(d) expressly confines the judicial review to orders of the board made pursuant to section 10(c). So far as the matters now under consideration are concerned, there can be no order of the board within the meaning of section 10(c) susceptible of review under section 10(e) and (f) until the employer, following the election, if one is held, has refused to bargain collectively with the representatives designated by the board, has been found guilty of refusing to bargain collectively with the representatives of his employees, and has been ordered by the board to cease and desist from such refusal. This is the most that the defendants claim for the act as regards provisions for judicial review. The contention of counsel for the defendants that the plaintiff is not concerned with proceedings before the board prior to the institution of proceedings charging an unfair labor practice will be considered later.

In connection with a consideration of the adequacy or inadequacy of the remedy at law, it is to be observed that the board may petition any Circuit Court of Appeals, etc., for the enforcement of a cease and desist order "and for appropriate temporary relief or restraining order" and that in such case there may be a review by the Supreme Court of the United States, but when "any person aggrieved by a final order of the board" petitions a Circuit Court of Appeals for review that court has "exclusive jurisdiction to grant *to the Board* such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part, the order of the Board," and there is no provision for review by the Supreme Court. Such judicial review as is provided for by section 10(e) and (f) does not include the power to grant temporary relief or restraining orders, except on application of the board.

The court is of the opinion that a provision for judicial review of the action of the board on (1) questions of jurisdiction, (2) questions as to the units appropriate for the purposes of collective bargaining, and (3) questions concerning the representatives of employees, only as an incident of a proceeding to determine whether or not the employer is guilty of an unfair labor practice, is wanting in due process. In Wadley So. R. Co. v. Georgia, 235 U. S. 651, at page 661, 35 S.Ct. 214, 218, 59 L.Ed. 405, the court said: "But in whatever method enforced, the right to a judicial review must be substantial, adequate, and safely available; but that right is merely nominal and illusory if the party to be affected can appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality rather than to ask for the protection of the law." It is true that the penalties referred to were money penalties, provided for by statute. In the case at bar, the penalty which an employer is required to pay in order to get a judicial review under the statute is the odium and loss of profits which will accrue to him because of his refusal to deal with persons said by a governmental agency to be representatives of his employees and which will result from the adjudication by the board that he has been guilty of an unfair labor practice. Furthermore, the statute

does not permit temporary relief by the reviewing court. He will be compelled to bear the odium and the loss of profits referred to until a final decree of the reviewing court. Other cases which support this conclusion of the court are: Missouri Pac. Ry. Co. v. Tucker, 230 U.S. 340, 347, 33 S.Ct. 961, 57 L.Ed. 1507; Oklahoma Operating Co. v. Love, 252 U.S. 331, 337, 40 S.Ct. 338, 64 L.Ed. 596; Ex parte Young, 209 U.S. 123, 147, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann.Cas. 764; Terrace v. Thompson, 263 U.S. 197, 216, 44 S.Ct. 15, 68 L.Ed. 255. If there is judicial review provided for by the statute, it is wanting in due process and the plaintiff does not have an adequate remedy at law.

When the defendants say, as they do, that the plaintiff is not concerned with the board's determination that it has jurisdiction, with the board's determination as to the proper unit for collective bargaining, with the board's determination as to representatives for collective bargaining, and that not until the board issues its complaint charging that an unfair labor practice has been engaged in and calls a hearing need the plaintiff be concerned, they fail to take account of facts. An investigation under section 9(c), 29 U.S.C.A. § 159(c), and particularly an election thereunder, accompanied, as it inevitably will be, by soliciting and electioneering by the rival parties, at the best, cannot fail to consume the time and attention of the workers, take their hands and minds away from their duties, measurably decrease quantity and quality of product, and cause the plaintiff damage, impossible accurately to measure but of substantial amount. At the worst, it can cause all the foregoing and ill will, strife, civil commotion, riots, damage to property of the plaintiff, and even bodily harm to the representatives of the rival factions. A complaint by the board (and the rules of the board provide for the filing of complaints by the board) that the plaintiff is guilty of an unfair labor practice, and a determination by the board that the plaintiff is guilty of such a practice, would certainly cost the plaintiff a very large sum of money, but a sum impossible of measurement. If the plaintiff is adjudged guilty of an unfair labor practice by a Circuit Court of Appeals, it is not the cease and desist order that will hurt; it is the ill will incident to the procedure leading up to it and the resultant loss and damage. The pendency of the proceedings sought to be restrained will interfere with the performance by employees of the plaintiff of their duties and will destroy the good will of said employees toward the plaintiff. In Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 252, 38 S.Ct. 65, 73, 62 L.Ed. 260, L.R.A.1918C, 497, Ann.Cas.1918B, 461, the court said: "In short, plaintiff was and is entitled to the good will of its employees, precisely as a merchant is entitled to the good will of his customers although they are under no obligation to continue to deal with him. The value of the relation lies in the reasonable probability that by properly treating its employees, and paying them fair wages, and avoiding reasonable grounds of complaint, it will be able to retain them in its employ, and to fill vacancies occurring from time to time by the employment of other men on the same terms. The pecuniary value of such reasonable probabilities is incalculably great, and is recognized by the law in a variety of relations." In Liggett Co. v. Baldridge, 278 U.S. 105, 111, 49 S.Ct. 57, 58, 73 L.Ed. 204, it was stated: "That appellant's business is a property right (Duplex Co. v. Deering, 254 U.S. 443, 465, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; Truax v. Corrigan, 257 U.S. 312, 327, 42 S.Ct. 124, 66 L.Ed. 254, 27 A.L.R. 375), and as such entitled to protection against state legislation in contravention of the federal Constitution, is, of course, clear." In Dorchy v. Kansas, 272 U.S. 306, 311, 47 S.Ct. 86, 87, 71 L.Ed. 248, the court said: "The right to carry on business—be it called liberty or property—has value. To interfere with this right without just cause is unlawful." See, also, Philadelphia Co. v. Stimson, 223 U.S. 605, 620, 32 S.Ct. 340, 56 L.Ed. 570; Ex parte Young, 209 U.S. 123, at page 156, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann.Cas. 764. The court concludes that the plaintiff is about to be subjected to irreparable injury.

It has been observed that section 8(3) of the act, 29 U.S.C.A. § 158(3), provides that nothing in said act, or in any other statute of the United States, shall preclude an employer from making an agreement for a closed shop; that by section 8(5) of the act, 29 U.S.C.A. § 158(5) it is provided that,

"It shall be an unfair labor practice for an employer * * * (5) To refuse

to bargain collectively with the representatives of his employees."

And that by Section 9(a), 29 U.S.C.A. § 159(a), it is provided that, "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." And that section 13, 29 U.S.C.A. § 163, provides: "Nothing in this Act [chapter] shall be construed so as to interfere with or impede or diminish in any way the right to strike." Consider the provision in respect of a closed shop in connection with these other provisions. Suppose at the election which has been called by the board amongst plaintiff's employees, the Bendix Employees' Association receives 1,800 votes and Local No. 9 receives 1,700 votes; that Bendix Employees' Association is, by the board, certified to the plaintiff as the representative for collective bargaining of all 3,540 employees; that Bendix Employees' Association thereupon propose to the plaintiff that there be a change in the "conditions of employment" and that the change consist of "an agreement with" Bendix Employees' Association "to require as a condition of employment membership therein." Section 8(3), 29 U.S.C.A. § 158(3). What are the duties of the plaintiff under these circumstances? What must it do in order that it be not guilty of an unfair labor practice? It must "bargain collectively" with Bendix Employees' Association concerning "an agreement with" the association "to require as a condition of employment membership therein," that is, a closed shop agreement. Oxford Dictionary says that the verb "bargain" means "to treat with any one as to the terms which one party is to give, and the other to accept, in a transaction between them." Webster's New International Dictionary defines the verb "bargain," "to negotiate over the terms of an agreement." It has been suggested that "to bargain" means merely "to talk." But no dictionary which the court has at hand considers the two expressions as equivalent or even refers to the latter in defining the former. It is true that "talking" may be a part of "bargaining," but, again, "talking" may be as far removed from "bargaining" as

are the poles from each other. The suggestion that the words "to bargain" in section 8(5) of the National Labor Relations Act (29 U.S.C.A. § 158(5)) mean merely "to talk" is contrary to reason. In the opinion of the court "to bargain" means "to negotiate over the terms of an agreement." Then the further question arises: May the plaintiff bargain indefinitely without any good-faith intention of entering into a closed shop agreement? The answer must be in the negative; one cannot be said to bargain for the purchase of a house if he have a settled determination never to buy a house on any terms. Must the plaintiff bargain in good faith with an intent to enter into some sort of a closed shop agreement? This is apparently the intent of the act. An agreement for a closed shop is expressly declared not to be illegal. The act applies compulsion to one of the contracting parties—the employer—and requires him to bargain concerning working conditions, and, since it is not illegal, an agreement for a closed shop may be a working condition. And, to pursue the intent of the act a little farther, since the employer must bargain in good faith with an intent to enter into some sort of a closed shop agreement, and, since, under the act, the representatives of the employees are at liberty arbitrarily to reject any suggestion of the employer, regardless of how reasonable it may be, the employer must eventually enter into a closed shop agreement. Accordingly, the plaintiff enters into a closed shop agreement with Bendix Employees' Association and, in pursuance thereof, informs the 1,700 members of Local No. 9 and the 40 independents that they must either join Bendix Employees' Association or be discharged, and they either do join or are discharged. The question is: Of what constitutional rights, if any, has the plaintiff been deprived? Under the facts assumed in this paragraph, it has been deprived of the right to bargain with the 1,700 members of Local No. 9 and the 40 independents. It has also been deprived of the right to bargain at all. If A is compelled to negotiate with B and must contract, but B is not only free from compulsion but is expressly informed that he is at liberty to reject any proposal of A, that which A does in pursuance of the compulsion cannot properly be called bargaining. A has lost his freedom of contract. These are property rights, and the plain-

tiff is deprived thereof without process of law, in violation of the Fifth Amendment to the Constitution. Lochner v. New York, 198 U.S. 45, 64, 25 S.Ct. 539, 49 L.Ed. 937, 3 Ann.Cas. 1133; Adair v. U. S., 208 U.S. 161, 175, 28 S.Ct. 277, 52 L.Ed. 436, 13 Ann.Cas. 764; Coppage v. Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441, L.R.A. 1915C, 960; Adkins v. Children's Hospital, 261 U.S. 525, 545, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238; Wolff Co. v. Industrial Court, 262 U.S. 522, 534, 43 S.Ct. 630, 67 L.Ed. 1103, 27 A.L.R. 1280. The inference to be drawn from Pennsylvania R. Co. v. U. S. R. Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536, and Pennsylvania R., etc., Federation v. Pennsylvania R. Co., 267 U.S. 203, 45 S.Ct. 307, 69 L.Ed. 574, is that a statute such as that under consideration in this case would be unconstitutional. In the earlier of these two cases, the court, 261 U.S. 72, at page 84, 43 S.Ct. 278, 283, 67 L.Ed. 536, said:

"The jurisdiction of the Board to direct the parties to do what it deems they should do is not to be limited by their constitutional or legal right to refuse to do it. Under the act there is no constraint upon them to do what the Board decides they should do except the moral constraint, already mentioned, of publication of its decision.

"It is not for this or any other court to pass upon the correctness of the conclusion of the Labor Board if it keeps within the jurisdiction thus assigned to it by the statute. The statute does not require the railway company to recognize or to deal with or confer with labor unions. It does not require employees to deal with their employers through their fellow employees. But we think it does vest the Labor Board with power to decide how such representatives ought to be chosen with a view to securing a satisfactory cooperation and leaves it to the two sides to accept or reject the decision. The statute provides the machinery for conferences, the hearings, the decisions and the moral sanction. The Labor Board must comply with the requirements of the statute; but having thus complied, it is not in its reasonings and conclusions limited as a court is limited to a consideration of the legal rights of the parties."

The defendants lean heavily on Texas & N. O. R. Co. v. Brotherhood of Railway Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034, but the two fundamental ideas found in the National Labor Relations Act, namely, "majority rule" and "compulsory unilateral arbitration," were not involved or considered in that case.

If we take the facts assumed in the preceding paragraph and, instead of a proposal for a change in "conditions of employment," we substitute a proposal for a change of "pay, wages" or "hours of employment," we come to a like conclusion. We find the plaintiff forced into compulsory unilateral arbitration and, without due process of law, deprived of property—the right to deal freely with each and all of its employees.

The combination of a majority rule, provided for by section 9(a), 29 U.S.C.A. § 159(a), and compulsory unilateral arbitration, provided for by section 8(5), 29 U.S. C.A. § 158(5), is the heart of the act. Take them out of the act, and there is no life left. Accordingly, it is concluded that the whole act is unconstitutional and void.

The motion of the defendants L. W. Beman, individually and as Regional Director, and Harold Cranefield, individually, to dismiss the bill of complaint should be overruled and denied, and there may be an order to that effect.

Harold Cranefield, as attorney for the board, J. Warren Madden, John M. Carmody, and Edwin S. Smith, individually, and as members of the board, move to quash the subpoena. Passing over the possible contention that the motion is too broad to be granted in its entirety, and therefore should be denied in its entirety, the court holds that this motion, so far as it is that of Harold Cranefield, as attorney for the board, should be overruled and denied. As regards the other three defendants, the court observes that possibly there is ground for quashing the returns of service, unless the motion because of its assignments of reasons constitutes a general appearance. The court will hear arguments on this question, or short briefs may be presented, as counsel prefer.

The court has indicated its opinion that the plaintiff is about to be subjected to irreparable injury and that it has no remedy at law. A preliminary injunction may issue, as prayed. Counsel for the plaintiff may prepare and, at the opening of court on March 31, 1936, present drafts of findings of fact, conclusions of law, and a decretal order not inconsistent with the views hereinabove expressed.